# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| REGINALD WHITE, JR., ) | |
| AIS #251345, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:19-CV-750-MHH-HNJ |
| LIEUTENANT ERIC W. HINES, and ) | |
| OFFICER SCOTT A. SCHUTTINGA, ) | |
| ) | |
| Defendants. ) | |

## SPECIAL REPORT

COME NOW Defendants, Lieutenant Eric W. Hines and Officer Scott A. Schuttinga, by and through undersigned counsel, and pursuant to this Court's order of December 10, 2019 (Doc. 8), hereby submit the following Special Report as follows:

## PARTIES

1.  Plaintiff, Reginald White ("inmate White"), is an inmate with the Alabama Department of Corrections ("ADOC") and is currented incarcerated in the Limestone Correctional Facility in Harvest, Alabama Inmate White was incarcerated at Bibb Correctional Facility in Brent, Alabama ("Bibb") at all times material hereto.

2.  Defendant, Eric W. Hines ("Lt. Hines"), is employed with ADOC as a Correctional Lieutenant at Bibb.

3. Defendant, Scott A. Schuttinga ("Officer Schuttinga"), is employed with ADOC as a Correctional Officer at Bibb.

## ALLEGATIONS

The Plaintiff, inmate White, alleges that a "bed roster" was conducted by multiple officers in the B-dorm at Bibb on April 14, 2019. (Doc. 1 at 4). It was announced that anyone not assigned to that dorm was to come forward, to which inmate White complied. (Doc. 1 at 4). As he was being escorted out of the dorm, Officer Schuttinga told inmate White to place his hands on the wall to be searched, and inmate White again complied. During the search, inmate White was told to pull his pants down so that his shorts could be searched. (Doc. 1 at 4). Officer Schuttinga testified via his affidavit that this allegation is untrue. (Exhibit B, Affidavit of Officer Schuttinga). As inmate White's shorts were being searched, he felt as if his legs were being snatched out from under him, which caused him to barely move his hands off the wall and look down. (Doc. 1 at 4). At that point, Officer Schuttinga stood up and said "Didn't I tell you to put your hands on the wall?" and threw a punch at inmate White. (Doc. 1 at 4). Officer Schuttinga did not punch inmate White nor did he make the statement "Didn't I tell you to put your hands on the wall?" of which inmate White accused him. (Ex. B). Inmate White began screaming for assistance from nearby Sergeants before he blacked out. (Doc. 1 at 4). After being placed in hand cuffs, inmate White was "snatched up" by Lieutenant Hines and aggressively pulled

by the arm out of B-dorm, with his pants and shorts still down around his ankles. (Doc. 1 at 5). Lt. Hines denies that he snatched inmate White up in an aggressive manner. (Exhibit C, Affidavit of Lt. Hines). Inmate White was having trouble walking and asked if someone would pull his pants up, but Hines refused the request, instead stating to inmate White "Didn't I tell you to walk boy?". (Doc. 1 at 5). Lt. Hines testified via his affidavit that he did not refuse a request from inmate White to pull up his pants. (Ex. C). Further, Lt. Hines did not tell inmate White to walk nor did he call him "boy". (Ex. C). When inmate White objected to that language, Lieutenant Hines sprayed him directly in the eyes with mace and beat him across the knees with a baton, causing him to fall. (Doc. 1 at 5). Lt. Hines did spray inmate White with Sabre Red, but denies the allegations that he beat him across the knees with his baton (Ex. C). Inmate White was taken to the infirmary where he was decontaminated and where it was discovered that his knees were swollen and bruised and that he had a hole in his right leg. (Doc. 1 at 5). Inmate White seeks compensatory damages and injunctive relief. (Doc. 6 at 6).

## **DEFENDANTS' EXHIBITS**

1. Exhibit A –   Institutional Records
2. Exhibit B –   Affidavit of Officer Schuttinga
3. Exhibit C –   Affidavit of Lt. Hines

3

4.      Exhibit D –      Relevant Medical Records;

## STATEMENT OF FACTS

On April 14, 2019, Officer Schuttinga was the assigned Healthcare Rover on A-night shift. (Exhibit A, Institutional Records, Incident Report p.1). At approximately 8:09 p.m., while assisting with institutional bed roster in B-Dorm Bay 4, Officer Schuttinga observed inmate White exiting B-Dorm Bay 4. (Ex. A, p.1). Officer Schuttinga gave inmate White a direct order to turn around for a routine pat search. (Ex. A, p.1, Ex. B). Inmate White complied. (Ex. A, p.1). During the pat search, inmate White became combative turning around towards Officer Schuttinga in an aggressive manner, grabbing Officer Schuttinga by the arm and pinning Officer Schuttinga against the glass of B-Dorm Bay 4. (Ex. A, p.1; Ex. B). (Ex. A, p.1). Lt. Hines, who was present on the scene, called "code red" via handheld radio. (Ex. A, p.1; Ex. B). Sgts. Andrew Cutts and Willie Penn, along with four other officers, were all present on the scene and responded to this incident. (Ex. A, p.1). Officers King and Bart took inmate White to the ground. (Ex. A, p. 1; Ex. B). Officer King gave inmate White a direct order to cease his negative actions. (Ex. A, p.1). Inmate White refused to comply with the order given, forcing himself to his feet, continuing to behave in an aggressive manner. (Ex. A, p.1). Sgt. Cutts conducted a two on one takedown from the rear on inmate White. (Ex. A, p.1). Sgt. Cutts gave inmate White a direct order to cease his negative actions to be handcuffed. (Ex. A, p.1). Inmate

White complied. (Ex. A, p.1). Lt. Hines properly handcuffed and began to escort inmate White to the Healthcare Unit ("HCU") to be medically assessed. (Ex. A, p.1). Upon escorting inmate White to the HCU, inmate White continued to behave in an unruly aggressive manner snatching away from Lt. Hines. (Ex. A, p.1). Lt. Hines delivered a one second burst of his assigned Sabre Red to inmate White's face to gain control. (Ex. A, p.1 Ex, C). Lt. Hines gave inmate White a direct order to cease actions. (Ex. A, p.1; Ex, C). Inmate White refused by attempting to kick staff. (Ex. A, p.1; Ex. C). Lt. Hines delivered several baton strikes to inmate White's right lower leg area. (Ex. A, p.1; Ex C). Lt. Hines gave inmate White a direct order to cease his negative behavior. (Ex. A, p.1; Ex, C). Inmate White complied with the order given. (Ex. A, p.1; Ex. C). All force ceased. (Ex. A, p.1; Ex. C). Inmate White was escorted to the HCU where he was decontaminated and medically assessed. (Ex. A, p.1). No serious injuries were noted and x-rays of Inmate White's knees confirmed that there was no injury to his knees. (Ex. A, p.1; Body Chart, p.5).

## LEGAL ARGUMENT

### Eighth Amendment: Alleged Excessive Force

In <u>Hudson v. McMillian</u> and <u>Whitley v. Albers</u>, the U.S. Supreme Court set the standards under which an Eighth Amendment excessive force claim must be analyzed. To succeed in proving correctional officers' use of force was unconstitutional, a plaintiff must show: (1) that subjectively, the defendants acted

5

maliciously or sadistically to cause harm to the plaintiff; and (2) the plaintiff suffered injury that was objectively harmful enough to establish a constitutional violation. Hudson v. McMillian, 503 U.S. 1, 8 (1992). In making this determination, the Court considers the following five factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relation between the need for force and the amount of force actually used; (4) the threat reasonably perceived; and (5) any efforts to temper the severity of a forceful response. Whitley v. Albers, 475 U.S. 312, 321 (1986). Applying these factors to the above referenced facts and documented injuries, inmate White cannot meet the objective component.

To establish that correctional officers acted with a sufficiently culpable state of mind, a plaintiff must show that force was applied "maliciously and sadistically to cause harm," amounting to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 320 (1986). On the other hand, if "force was applied in a good faith effort to maintain or restore discipline," as it was here, then the officers acted correctly and there was no constitutional violation. Hudson v. McMillian, 503 U.S. 1 (1992).

Inmate White cannot show that subjectively Defendants acted maliciously or sadistically to cause him harm. Given inmate White's above referenced aggressive and combative behavior, any alleged force was "applied in a good faith effort to maintain or restore discipline," Defendants acted correctly and there is no

6

constitutional violation.  Hudson v. McMillian, 503 U.S. 1 (1992).  Thus, inmate White's excessive force claim is without merit.

### Eleventh Amendment Immunity and Sovereign Immunity

To the extent inmate White has named Defendants including, in their official capacity, Defendants are absolutely immune from suit for damages. Walker-El v. Naphcare Med. Servs., Inc., 432 F.Supp.2d 1264, 1268 (S.D. Ala. 2006) citing Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998). The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  The Amendment therefore not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizenry.  See Edelman v. Jordan, 415 U.S. at 663, 94 S. Ct. at 1347 and Hans v. Louisiana, 134 U.S. 1, 13-15, 10 S. Ct. 504 (1890). The Eleventh Amendment also prohibits suit against state officials and employees where the state is the real, substantial party in interest.  See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L.Ed.2d 67 (1984).  "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." Summit Medical

Associates, P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999). This suit is in reality a suit against the State. Thus, Defendants are absolutely immune from damages liability and the claims against each of them in their official capacity are due to be dismissed.

### Qualified Immunity and State-Agent Immunity

Defendants, in their individual capacities, are also immune from suit by virtue of qualified immunity and state-agent immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). As explained *infra,* Defendants' alleged acts or omissions have not violated any established constitutional or statutory rights. Further, Defendants' alleged acts or omissions consist of discretionary functions, and because their actions do not violate any clearly established constitutional or statutory rights, they are protected by qualified immunity. Pinkney v. Davis, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity). The Eleventh Circuit has also held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices

that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Wilson</u>, 163 F.3d at 1295. In addition, Defendants are entitled to state agent immunity to the extent inmate White may have alleged any state law causes of action.  See <u>Adams v Franklin</u>, 111 F. Supp.2d 1255(M.D. Ala. 2000); <u>Davis v Purcell</u>, 2014 WL 988596 (N.D. Ala).

## **Respondeat Superior Liability is not applicable.**

It is well established that supervisory officials are not liable under § 1983 for the alleged unconstitutional acts of their subordinates based on respondeat superior or vicarious liability. <u>See</u> <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003). Thus, inmate White fails to state a claim against these Defendants, to the extent he is attempting to hold them liable based on a respondeat superior theory of liability.

Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  <u>Id.</u>  This connection may also be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from

doing so.' Id. (Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999)).  There is no such evidence to that effect here.  Therefore, inmate White's claims against these Defendants are subject to dismissal.

## CONCLUSION

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). This case is ripe for summary judgment because there is no genuine issue of material fact as to the Plaintiff, inmate White's claims. Therefore, the Defendants are entitled to judgment as a matter of law and inmate White's claims are due to be dismissed.

    Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL

*/s/ Neva C. Conway*
Neva C. Conway
Assistant Attorney General
Counsel for Defendants

OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL  36130
(334) 242-7300 (T)
(334) 353-8400 (F)
Neva.Conway@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I certify that I have on April 3, 2020, filed the foregoing Motion for Extension using the Court's CM/ECF electronic filing system. I further certify that I have mailed a copy of the foregoing to the following non-CM/ECF participants by placing the same in U.S. First Class Mail, postage prepaid and properly addressed to the following:

    Reginald White, Jr., AIS #251345
    W.E. Donaldson Correctional Facility
    100 Warrior Lane
    Bessemer, AL 35023

                                        */s/ Neva C. Conway*
                                        OF COUNSEL