FILED
2020 Nov-23  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| REGINALD WHITE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  5:19-cv-00750-MHH-HNJ |
| | ) | |
| LIEUTENANT ERIC W. HINES, and | ) | |
| OFFICER SCOTT A. SCHUTTINGA, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff, Reginald White, Jr., has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights.  (Doc. 1).  The plaintiff names the following defendants in the complaint: Lieutenant Eric W. Hines and Officer Scott A. Schuttinga.  (*Id.* at 3).  The plaintiff seeks compensatory damages and injunctive relief. (*Id.* at 6).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. Procedural History

On December 10, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a special report addressing the plaintiff's factual allegations.  (Doc. 8).  The undersigned advised the defendants that the special report

1

could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On April 3, 2020, the defendants filed a special report, supplemented by affidavits and/or other evidence. (Doc. 14). On May 7, 2020, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified the plaintiff he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 15). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Rule 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On June 10, 2020, the plaintiff filed a motion for extension of time to file a response. (Doc. 16). Although the court granted the plaintiff's motion (doc. 17), the plaintiff did not file a response.

This matter now proceeds before the court on the defendants' motion for summary judgment.

## II. Standard of Review

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most

favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citation omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449

3

U.S. 5, 9 (1980).  A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed.  *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. Summary Judgment Facts[1]

The plaintiff is an inmate housed at Donaldson Correctional Facility in Bessemer, Alabama.  (Doc. 6).  At the time of the incident on April 14, 2019, the State housed plaintiff at Bibb Correctional Facility in Brent, Alabama.  (*Id.* at 4).  After the incident, the State "immediately placed [plaintiff] in a suicide cell and transferred [him] 4 days later to Limestone Corr[ectional] Facility [and] immediately placed [him] in segregation."  (Doc. 1 at 2).

The plaintiff alleges that on April 14, 2019, multiple officers conducted a "bed roster" in the B-dorm of the Bibb facility.  (*Id.* at 4).  Lt. Hines announced that anyone not assigned to that dorm was to come forward; the plaintiff complied.  (*Id.*).  Officer Schuttinga motioned to the plaintiff to come out of the dorm and told him to place his hands on the wall to be searched.  (*Id.*).[2]  Again, the plaintiff complied.  (*Id.*).  During the search, Officer Schuttinga told the plaintiff to pull his pants down so that Schuttinga

---

[1] The following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party.  *Chapman*, 229 F.3d at 1023.  Factual disputes are addressed in footnote form.

[2] In his statement, Officer Shuttinga remarked that he "observed [the plaintiff] exiting B-Dorm … [and] gave [the plaintiff] a direct order to turn around for a routine pat search."  (Doc. 14-1 at 13).

could search the plaintiff's shorts.  (*Id.*).[3]  When the plaintiff pulled his pants down, his shorts fell to his ankles also.  (*Id.*).  As Officer Shuttinga was searching the plaintiff's shorts, the plaintiff "felt [his] legs almost get snatched from under [him]."  (*Id.*).  The plaintiff looked down to see what Officer Shuttinga was doing and saw that he was trying to rip his pocket off his shorts.  (*Id.*).  In the process of looking down, the plaintiff's "hands barely came off the wall."  (*Id.*).  Officer Schuttinga stood up and said, "Didn't I tell you to put your hands on the wall?" and threw a punch at the plaintiff. (*Id.*).[4]  Because the plaintiff's pants and shorts were around his ankles, he could not move much and started screaming for assistance from Sgt. Cutts and Sgt. Penn.  (*Id.*). The plaintiff "blacked out," was "subdued," and placed in handcuffs by Lt. Hines. (*Id.*). The plaintiff states, "Bibb County Corr[ectional] facility has cameras.  If you look at the cameras, it'll bring the truth of the situation out."  (*Id.*).

After Lt. Hines handcuffed the plaintiff, Lt. Hines "snatched" him up and "began aggressively pulling [him] by [his] arm out of B-dorm" with his pants and shorts around his ankles. (*Id.* at 5).[5]  Lt. Hines ordered the plaintiff to walk; the plaintiff asked

---

[3] In his affidavit, Officer Shuttinga disputes the plaintiff's allegation that he told him to pull his pants down.  Shuttinga states that he "ordered [the plaintiff] to submit to a pat search, during the pat search, [the plaintiff] became aggressive and combative by turning towards me, grabbing me by the arm and pinning me against the glass."  (Doc. 14-2 at 1).

[4] Officer Schuttinga disputes this allegation and further states that Lt. Hines "called for a code red, after I was pinned against the glass.  At no time did I throw a punch at [the plaintiff]."  (Doc. 14-2 at 1).

[5] Lt. Hines disputes "snatch[ing] [the plaintiff] in an aggressive manner."  (Doc. 14-3 at 1).

if he could pull up his pants. (*Id*.). Lt. Hines said "no." (*Id*.). After almost falling, the

plaintiff asked if someone could pull up his pants; no one responded. (*Id*.). Instead,

Lt. Hines said, "Didn't I tell you to walk boy?" (*Id*.).[6] The plaintiff responded, "I ain't

no boy," and Lt. Hines replied, "Ok, let's do it then." (*Id*.). Lt. Hines sprayed the

plaintiff "directly in the eyes" with mace and "beat [him] across [his] knees with [a]

baton, causing [him] to fall." (*Id*.).[7] Lt. Hines again told the plaintiff to walk, and the

plaintiff yelled, "Can somebody please pull my pants up so I can walk?" (*Id*.). Lt. Hines

told the plaintiff to take off his shoes and pants and walk. (*Id*.). After the plaintiff did

so, Lt. Hines took him to the infirmary[8] where staff decontaminated him and completed

a body chart. (*Id*.).[9] The plaintiff states his knees "were swollen with knots and bruises

---

[6] Lt. Hines states, "I did not refuse a request to pull [the plaintiff's] pants up, nor did I state for him to walk 'boy.'" (Doc. 14-3 at 1).

[7] Lt. Hines denies the plaintiff's allegation but states, "I did, however, administer [the plaintiff] with a one second burst of sabre red spray, upon [the plaintiff's] unruly and aggressive behavior, by attempting to kick several staff members." (Doc. 14-3 at 1).

[8] Lt. Hines states that when the plaintiff "attempted to snatch away and elude my control," he "struck [the plaintiff] several times to his lower right leg." (Doc. 14-3 at 2). According to the Incident Report and Duty Officer Report prepared (but not signed) by Sgt. Cutts, Officer Barr and Officer Davis escorted the plaintiff to the healthcare unit following the confrontation with Lt. Hines. (Doc. 14-1 at 1, 3). Sgt. Cutts advised the plaintiff that disciplinary action would be taken for "Assault on an ADOC Official, Failure to Obey a Direct Order of an ADOC Employee, and Being in an Unauthorized area." (*Id*. at 2, 4). In the plaintiff's written statement about the incident, the plaintiff wrote "refuse to talk." (*Id*. at 6). The Investigative Report prepared (but not signed) by Captain Gretchen Rooker on April 29, 2019, indicates that "force was justified and an acceptable level to gain compliance from an out of control suspect. Therefore, the investigating officer recommends [the plaintiff] should receive appropriate disciplinary action." (*Id*. at 15).

[9] Defendants have attached the statements of Officer Jamie King, Officer Christopher Barr, Officer Bob Gulley, Officer Urian Davis, Sgt. Willie Penn, and Sgt. Andrew Cutts, along with their own statements, in which they all confirm witnessing the plaintiff grabbing and pushing Officer Shuttinga

and a hole [was] in my right leg."  (*Id.*).[10] The plaintiff reiterates that "Bibb County Corr[ectional] Facility has cameras.  If you look at the cameras, it'll bring the truth of the situation out."  (*Id.*).

The plaintiff seeks $150,000 in compensatory damages and termination of Officer Shuttinga and Lt. Hines for their actions.  (*Id.* at 6).

## IV. Analysis

### A. Official Capacity Claims

To the extent the plaintiff lodges constitutional claims against Officer Schuttinga and Lt. Hines in their official capacities for money damages, the plaintiff's claims warrant dismissal under the doctrine of sovereign immunity.   The Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Likewise, Eleventh Amendment immunity also bars claims for money damages against officials and employees of state entities sued in their official capacities. *Id.* at 101.

Based on the foregoing, the court should grant defendants' motion for summary judgment on official capacity claims for monetary relief.

---

into a glass door or window and engaging in other hostile and aggressive behavior.  (Doc. 14-1 at 7–14).

[10] The body chart shows a small circle on the plaintiff's lower right leg.  (Doc. 14-1 at 5).  Radiology reports indicated "[n]o obvious evidence of an acute osseous injury involving the right knee" and "[n]o acute fracture" of the left knee.  (Doc. 14-4 at 1–2).

**B. Individual Capacity Claims**

The defendants also move for summary judgment on the plaintiff's Eighth Amendment excessive force claim against them in their individual capacities.

The plaintiff's excessive force allegations must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999). In *Hudson*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7.

With these principles in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley,* 475 U.S. at 321.

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

8

*Hudson*, 503 U.S. at 9 (citations omitted).

To create a genuine issue of material fact, the plaintiff must come forward with evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically. Generally, courts " do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

The defendants argue that the plaintiff cannot show that they acted maliciously or sadistically to cause harm because the plaintiff was aggressive and combative during the incident; thus, they argue they applied the force in good faith to restore discipline. (Doc. 14 at 6). However, the parties have presented different versions of the facts as to the use of force in this case.

The plaintiff states that during a bodily search, he looked down, and when his "hands barely came off the wall," Officer Schuttinga reprimanded and punched him. (Doc. 1 at 4). Plaintiff also intimates that Officer Schuttinga continued the alleged assault. Officer Schuttinga states that the plaintiff "pinned [him] against the glass" and that he never punched the plaintiff. (Doc. 14-2 at 1). In viewing the evidence in a light most favorable to the plaintiff and drawing all reasonable inferences against the moving party, *see Chapman*, 229 F.3d at 1023, a genuine issue of fact exists regarding the need for force by Officer Schuttinga in this instance.

The plaintiff also argues that Lt. Hines forced him to walk with his pants and shorts around his ankles, repeatedly asking for, but never receiving, assistance. (Doc. 1

at 4–5).  Without provocation, Lt. Hines sprayed the plaintiff "directly in the eyes" with mace and "beat [him] across [his] knees" with a baton.  (*Id.* at 5).  Meanwhile, Lt. Hines admits that he administered a one second burst of mace to the plaintiff because the plaintiff was aggressive and attempted to kick staff.  (Doc. 14-3 at 1).  Furthermore, the plaintiff attempted to resist Hines's control, so Hines "struck [the plaintiff] several times to his lower right leg."  (Doc. 14-3 at 2).

Based on these conflicting accounts and construing the facts in the light most favorable to the plaintiff, the court finds that a genuine issue of material fact exists regarding Lt. Hines's need to use force.  Additional factual issues exist as to the relationship between the need and amount of force used, the threat reasonably perceived by Lt. Hines, and efforts made to reduce the severity of the response, especially given the fact that the plaintiff was in handcuffs.

As to the extent of injury, the plaintiff asserts that his knees were swollen with knots and bruises.  (Doc. 1 at 5).  He also stated he had a "hole in [his] right leg."  (*Id.*). The plaintiff's body chart reflects a small circle on the plaintiff's lower right leg but provides no description or explanation.  (Doc. 14-1 at 5).  Radiology reports of the plaintiff's knees confirmed no acute osseous injury or fracture; however, further description of the state of the plaintiff's injuries is lacking.  (Doc. 14-4 at 1–2). Accordingly, the extent of the plaintiff's injuries is uncertain based on the evidence in the record.

Finally, in two places in his complaint, the plaintiff states that the Bibb facility has cameras which would support his allegations.  (Doc. 1 at 4–5).  The defendants have not submitted visual evidence refuting the plaintiff's allegations and have not acknowledged whether camera footage exists.

Because a genuine dispute of material fact exists, which cannot be resolved at the summary judgment stage, the defendants' motion for summary judgment warrants denial on the plaintiff's individual capacity claims.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court **GRANT** the motion for summary judgment in part and **DENY** it in part.

The court should **GRANT** the defendants' motion for summary judgment on the plaintiff's claims against them in their official capacities.

The court should **DENY** the defendants' motion for summary judgment on the plaintiff's excessive force claims against them their individual capacities.

The undersigned **FURTHER RECOMMENDS** the court **REFER** the plaintiff's remaining claims to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to

11

which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 23rd day of November, 2020.

_____

HERMAN N. JOHNSON, JR.

UNITED STATES MAGISTRATE JUDGE