FILED
2022 Jun-06  PM 08:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| REGINALD WHITE, JR.,<br>AIS #251345,<br><br>Plaintiff,<br><br>v.<br><br>ERIC W. HINES, and<br>SCOTT A. SCHUTTINGA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO.<br>)   5:19-CV-750-MHH-HNJ<br>)<br>)<br>)<br>) |

---

### PLAINTIFF'S OPPOSITION TO THE
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

I.     INTRODUCTION ……… pg. 2

II.    STATEMENT OF FACTS ……… pg. 2

    A.  PLAINTIFFS STATEMENT OF FACTS ……… pg. 2

    B.  DEFENDANT ERIC HINES AND SCOTT SHUTTINGA "UNDISPUTED"

       STATEMENT OF FACTS …… pg. 4

III.   STANDARD OF REVIEW ……… pg. 6

IV.    ARGUMENTS ……….. pg. 7

V.     WRITTEN DISCOVERY REQUEST ………. pg. 9

VI.    CONCLUSION ……….. pg. 9

VII.    **CERTIFICATE OF SERVICE ……… pg. 10**

_____

I.    **INTRODUCTION**

    The malicious and forceful actions of Officer Schuttinga ("Schuttinga") and Lieutenant Hines ("Hines") inflicted upon the Plaintiff, Reginald White, Jr. ("Reginald") were unwarranted, beyond the limits of their official capacity, and caused Reginald unnecessary harm.


II.    **STATEMENT OF FACTS**

    A.  **PLAINTIFFS STATEMENT OF FACTS**

1. At the time of the incident on April 14, 2019, Reginald was an inmate at Bibb Correctional Facility in Brent, Alabama. (Doc. 1 at 4). On April 14, 2019, around 8:09 pm, multiple officers conducted a "bed roster" check in the B-dorm of the Bibb facility. (*Id*. at 4). Hines announced that anyone not assigned to that dorm was to come forward; Reginald, assigned to B-3, was in B-4 at the time and complied with the order. (*Id*.).

2. Schuttinga motioned to Reginald to come out of B-4 and told him to place his hands on the wall to be searched. (*Id*.). Again, Reginald complied. (*Id*.).

3. During the search, Schuttinga told Reginald to pull his pants down so that Schuttinga could search Reginald's shorts. (*Id*.). When Reginald pulled his pants down, his shorts fell to his ankles also. (*Id*.). As Shuttinga was searching Reginald's shorts, Reginald "felt [his] legs almost get snatched from under [him]." (*Id*.). Reginald looked down to see what Shuttinga was doing and saw that he was trying to rip his pocket off his shorts. (*Id*.). In the process of looking down, Reginald's "hands barely came off the wall." (*Id*.). In response, Schuttinga stood up and said, "Didn't I tell you to put your hands on the wall?" and threw a punch at Reginald. (*Id*.). Because Reginald's pants and shorts were around

his ankles, he could not move much and yelled for assistance from Sargeant Cutts and Sargeant Penn. (*Id.*).

4.  After Hines handcuffed Reginald, Hines "snatched" him up and "began aggressively pulling [him] by [his] arm out of B-dorm" with his pants and shorts still around his ankles. (*Id.* at 5) Hines ordered Reginald to walk; Reginald asked if he could pull up his pants. (*Id.*). Hines said "no." (*Id.*). After almost falling, Reginald asked if someone could pull up his pants; none of the officers responded. (*Id.*). Instead, Hines said, "Didn't I tell you to walk boy?" (*Id.*). Reginald responded, "I ain't no boy," and Hines replied, "Ok, let's do it then." (*Id.*).  Hines sprayed Reginald "directly in the eyes" with mace and "beat [him] across [his] knees with [a] baton, causing [him] to fall." (*Id.*).

5.  Hines again told Reginald to walk, and Reginald yelled, "Can somebody please pull my pants up so I can walk?" (*Id.*). Hines told Reginald to take off his shoes and pants and walk. (*Id.*).

6.  After Reginald did so, Hines took him to the infirmary where staff decontaminated him and completed a body chart. (*Id.*). Reginald states his knees "were swollen with knots and bruises and a hole [was] in my right leg." (*Id.*).

7.  Reginald reiterates that "Bibb County Corr[ectional] Facility has cameras. If you look at the cameras, it'll bring the truth of the situation out." (*Id.*).

8.  Reginald seeks $150,000 in compensatory damages and termination of Shuttinga and Hines for their actions. (*Id.* at 6).

9.  After the incident, the State "immediately placed [plaintiff] in a suicide cell and transferred [him] 4 days later to Limestone Corr[ectional] Facility [and] immediately placed [him] in segregation." (*Id*. at 2).

**B.  DEFENDANT ERIC HINES AND SCOTT SHUTTINGA "UNDISPUTED" STATEMENT OF FACTS**

1. On April 14, 2019, Schuttinga was assigned the Healthcare Rover on A-night shift. (Exhibit A, Institutional Records, Incident Report p.1).

2. At approximately 8:09 p.m., while assisting with institutional bed roster in B-Dorm Bay 4, Schuttinga observed Reginald exiting B-Dorm Bay 4. (Ex. A, p.1) Schuttinga gave Reginald a direct order to turn around for a routine pat search. (Ex. A, p.1, Ex. B). Reginald complied. (Ex. A, p.1).

3. During the pat search, Reginald became combative, turning around towards Schuttinga in an aggressive manner, grabbing Schuttinga by the arm and pinning Schuttinga against the glass of B-Dorm Bay 4. (Ex. A, p.1; Ex. B). (Ex. A, p.1). **Disputed.** *(Id.*).

4.  Hines, who was present on the scene, called "code red" via handheld radio. (Ex. A, p.1; Ex. B).

5. Sergeants Andrew Cutts and Willie Penn, along with four other officers, were all present on the scene and responded to this incident. (Ex. A, p.1).

6. Officers King and Bart took Reginald to the ground. (Ex. A, p. 1; Ex. B). King gave Reginald a direct order to cease his negative actions. (Ex. A, p.1). **Disputed.** *(Id.*).

7. Reginald refused to comply with the order given, forcing himself to his feet, continuing to behave in an aggressive manner. (Ex. A, p.1). **Disputed.** *(Id.*).

8. Cutts conducted a two on one takedown from the rear on Reginald. (Ex. A, p.1). Cutts gave Reginald a direct order to cease his negative actions to be handcuffed. (Ex. A, p.1). **Disputed.** *(Id.*).

9. Reginald complied. (Ex. A, p.1). Hines properly handcuffed and began to escort Reginald to the Healthcare Unit ("HCU") to be medically assessed. (Ex. A, p.1).

10. Upon escorting Reginald to the HCU, Reginald continued to behave in an unruly aggressive manner snatching away from Hines. (Ex. A, p.1). Hines delivered a one second burst of his assigned Sabre Red to Reginald's face to gain control. (Ex. A, p.1 Ex, C). **Disputed.** [*Id.*, Doc. 14-3 at 1]

11. Hines gave Reginald a direct order to cease actions. (Ex. A, p.1; Ex, C). Reginald refused by attempting to kick staff. (Ex. A, p.1; Ex. C). Hines delivered several baton strikes to Reginald's right lower leg area. (Ex. A, p.1; Ex C) **Disputed.** [*Id.*, Doc. 14-3 at 2]

12. Hines gave Reginald a direct order to cease his negative behavior. (Ex. A, p.1; Ex, C). Reginald complied with the order given. (Ex. A, p.1; Ex. C). All force ceased. (Ex. A, p.1; Ex. C).

13. Reginald was escorted to the HCU where he was decontaminated and medically assessed. (Ex. A, p.1). No serious injuries were noted and x-rays of Reginald's knees confirmed that there was no injury to his knees. (Ex. A, p.1; Body Chart, p.5). **Disputed.** [Id., Doc. 14-4 at 1–2]


## III.    STANDARD OF REVIEW

Because the court has construed the defendants' special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all

reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark,* Inc., 929 F.2d 604, 608 (11th Cir. 1991). Unless the Plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker,* 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the Plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the Plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citation omitted).

However, any "specific facts" pled in a pro se Plaintiff's sworn complaint must be considered in opposition to summary judgment. See *Caldwell v. Warden*, *FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the Plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading

drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n,* 787 F.3d 1105, 1107 (11th Cir. 2015).

### IV.   ARGUMENT

The actions of Officer Schuttinga and Lieutenant Hines are in clear violation of the Eighth Amendment of the United States constitution. In *Hudson v. McMillian* and *Whitley v. Albers,* the U.S. Supreme Court set the standards under which an Eighth Amendment excessive force claim must be analyzed. To succeed in proving correctional officers' use of force was unconstitutional, a Plaintiff must show: (1) that subjectively, the defendants acted maliciously or sadistically to cause harm to the Plaintiff; and (2) the Plaintiff suffered injury that was objectively harmful enough to establish a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In making this determination, the Court considers the following five factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relation between the need for force and the amount of force actually used; (4) the threat reasonably perceived; and (5) any efforts to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Applying these factors to the above referenced facts and documented injuries, Reginald does in fact meet the objective component.

To establish that correctional officers acted with a sufficiently culpable state of mind, a Plaintiff must show that force was applied "maliciously and sadistically to cause harm," amounting to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The actions of Officer Schuttinga and of  Lieutenant Hines meet both of the aforementioned conditions.

While Reginald was being searched by Officer Schuttinga, he "barely" removed his hands from the wall. This was as a result of looking down to see what had caused the feeling of his legs being snatched out from under him. In response, Officer Schuttinga threw a punch at Reginald causing Reginald to black out. Officer Schuttinga's punch was not only malicious, but also incredibly unwarranted given that Reginald only slightly removed his hands from the wall as a result of looking down to investigate the cause of the aggressive tugging at his leg. The actions of Reginald cannot be construed as threatening or combative towards Officer Schuttinga to warrant being punched. This statement is justified by the fact that even after being punched and blacking out, Reginald's immediate reaction was not to respond aggressively, but instead to ask Sargeant Cutts and Sargeant Penn for assistance.

Shortly thereafter, Lieutenant Hines handcuffs Reginald, aggressively pulls him up off the floor, and orders Reginald to walk as his pants and shorts are still around his ankles. Reginald asks the surrounding guards if one of them can pull up his pants so he can walk easier to which there is no response. Reginald nearly falls and Lieutenant Hines, instead of helping Reginald lift up his pants in order to walk, asks, "Didn't I tell you to walk boy?" Reginald responded, "I ain't no boy" to which Lieutenant Hines replied, "Ok, let's do it then." Lieutenant Hines then sprayed Reginald "directly in the eyes" with mace and "beat [him] across [his] knees with [a] baton, causing [him] to fall." Lieutenant Hines, after stating a phrase with derogatory racial implications relating back to slavery, unjustifiably physically assaulted Reginald. Reginald had posed absolutely no threat to Lieutenant Hines and only verbally responded to Lieutenant Hines racist remark. However, in retaliation to Reginald's verbal response, Lieutenant Hines painfully applied mace to Reginald's eyes and beat his knees with a baton to the point that, as Reginald describes, his knees "were swollen with knots and bruises and a hole [was] in my right leg."

Reginald can subjectively show that the defendants acted maliciously and sadistically to cause him harm. Given the fact that Reginald did not display any threatening behavior to warrant a physical assault, the harmful force applied was without cause. The defendants acted unjustifiably and violated the Eighth Amendment *Hudson v. McMillian*, 503 U.S. 1 (1992). Thus, Reginald's excessive force claim has merit.

## V.    WRITTEN DISCOVERY REQUEST

On May 2, 2022, the Defendant's filed Exhibit 2 and Exhibit 3 depicting email correspondence between Plaintiff's counsel and Tara S. Hetzel, Chief Division Chief at the Office of the Attorney General regarding the undersigned office's response to the written discovery request. The response to the request was primarily delayed due to the ADOC Covid-19 policies in place, which restricted  Plaintiff's counsel's ability to meet with Reginald in person. Further, during this period I have faced significant personal matters that caused additional delay. Plaintiff's counsel respectfully requests that this Court recognizes the unusual circumstances that the pandemic has presented in access between attorney and incarcerated client.

## VI.   CONCLUSION

For the reasons set forth above in her Opposition to the Defendants' Motion for Summary Judgment, the Defendants' motions are due to be denied.

Respectfully submitted this the 6th day of June 2022.

*/s/ Richard R. Rice*
RICHARD R. RICE
Counsel for the Plaintiff

**OF COUNSEL:**

The Rice Law Firm, LLC
420 20th Street North, Suite 2000
Post Office Box 453
Birmingham, Alabama 35201
rrice@rice-lawfirm.com


## VII.    CERTIFICATE OF SERVICE

I hereby certify that I have on June 6, 2022 electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of the same to Tara S. Hetzel.


Tara S. Hetzel
Deputy Attorney General
501 Washington Avenue
Montgomery, Alabama 36130
334-242-7300 (T)
334-353-8400 (F)
Tara.Hetzel@AlabamaAG.gov


                                            */s/ Richard R. Rice*
                                            Richard R. Rice
                                            The Rice Law Firm, LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **REGINALD WHITE, JR.,** | ) | |
| **AIS #251345,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:19-CV-750-MHH-HNJ** |
| **ERIC W. HINES, and** | ) | |
| **SCOTT A. SCHUTTINGA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DECLARATION OF Reginald White, Jr.,

I, Reginald White, Jr., declare under penalty of perjury that the following is true and correct to the best of my information and belief:  My name is Reginald White, Jr.. I am currently an inmate housed at Elmore Correctional Facility, 3520 Marion Spillway Rd., Elmore, AL 36025. At the time of the incident on April 14, 2019, I was housed at Bibb County Correctional Facility, 565, Bibb Lane, Brent, Alabama 35034. Immediately following the incident, I was placed in a suicide cell and transfered four days later to Limestone Correctional Facility, 28779 Nick Davis Rd, Harvest, AL 35749, where I was immedietly placed into a segregation cell.

On April 14, 2019, around 8:09 pm, multiple officers conducted a "bed roster" check in the B-dorm of the Bibb facility. Lieutenant Hines announced that anyone not assigned to that dorm was to come forward; although I was assigned to B-3, at that time I was in B-4 and complied with Hines' order. Officer Schuttinga motioned for me to come out of B-4 and told me to place my hands on the wall to be searched. Again, I complied.

During the search, Schuttinga told me to pull my pants down so that he could search my shorts. When I pulled my pants down, my shorts fell to my ankles also. As Shuttinga was searching my shorts, I felt my legs almost get snatched from under me. As I looked down to see what Shuttinga was doing, my hands barely came off the wall. In response, Schuttinga stood up and said, "Didn't I tell you to put your hands on the wall?" and threw a punch at me. Because my pants and shorts were around my ankles, I could not move much and yelled for help from Sargeant Cutts and Sargeant Penn.

Lieutenant Hines handcuffed me. After Lieutenant Hines handcuffed me, he snatched me up and began aggressively pulling me by my arm out of B-dorm with my pants and shorts still around my ankles. I struggled to walk, as my pants were still around my ankles, and asked Hines and the officers for help pulling my pants up, which they refused or didn't respond to. Instead, Hines said, "Didn't I tell you to walk, boy?" I responded, "I ain't no boy," and Hines replied, "Ok, let's do it then." He sprayed me directly in the eyes with Sabre Red and beat me across my knees with a baton, causing me to fall. Hines continued to hit me after I fell.

Hines took me to the infirmary where staff decontaminated me and completed a body chart. My knees were swollen with knots and bruises and I was bleeding from a hole in my right leg caused by a hit from the baton.

This statement is true and correct. Officer Schuttinga and Lieutenant Hines unjustly used physical force on me.

The forgoing statement and declaration are submitted under penalty of perjury pursuant to 28 USC 1746 and are true to the best of my knowledge. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

**Mr. Reginald White, Jr.,**

The forgoing statement and declaration are submitted under penalty of perjury pursuant to 28

USC 1746 and are true to the best of my knowledge. I declare under penalty of perjury under the

laws of the United States of America that the foregoing is true and correct.

*Reginald White Jr.*

**Mr. Reginald White, Jr.,**

Date: 6/3/22

Signature

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

REGINALD WHITE, JR.,      )
AIS #251345,              )
                         )
        Plaintiff,        )
                         )
v.                        )        CIVIL ACTION NO.
                         )        5:19-CV-750-MHH-HNJ
ERIC W. HINES, et al.,    )
                         )
        Defendants.       )

**CONSOLIDATED DISCOVERY REQUESTS TO
PLAINTIFF REGINALD WHITE, JR. BY DEFENDANTS**

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, Defendants Eric

W. Hines and Scott A. Schuttinga ("Defendants") request that Plaintiff Reginald White, Jr.

("Plaintiff") answer the following discovery requests within thirty (30) days to the following

counsel at the following location:

Tara S. Hetzel, Deputy Attorney General
OFFICE OF ATTORNEY GENERAL
GENERAL CIVIL DIVISION
501 Washington Avenue
Montgomery, Alabama 36130

The discovery requests that follow are to be considered continuing, and Plaintiff is

required to provide by way of supplementary answers, such additional information or documents

as he or any person acting on his behalf may hereafter obtain which will augment, clarify, or

otherwise modify the answers now given to these requests. Such supplementary responses are to

be served upon Defendants' counsel within fourteen (14) days after receipt of such information or documents.

## INSTRUCTIONS AND DEFINITIONS

A. PRIVILEGES:

1.   If in response to any request for production, Plaintiff asserts any claim of privilege, or any other reason in support of his refusal to produce the requested documents, or any part thereof, please identify each such document in detail to enable Defendant to determine the nature, subject matter, and date thereof. Please disclose the failure to produce each document withheld, in whole or in part, and provide a privilege log identifying such document by date, sender, recipient, subject matter, and any other information relevant to assessing the claim of privilege, and then comply with the request to the extent that the privilege or other reason does not apply to said documents or parts thereof, as required by Rule 26 (b)(5) of the *Federal Rules of Civil Procedure*.

B. DEFINITIONS:

For the purposes of these interrogatories and requests for production, the following words and phrases shall have been construed with reference to the following meanings and definitions. Defendants provide the following definitions for the purpose of clarifying the meaning of various words and phrases contained herein to help Plaintiff understand the objectives of these discovery efforts and to locate and furnish the relevant information and materials. It is, therefore, expressly stipulated and agreed by Defendants that an affirmative response on the part of Plaintiff will not be construed as an admission that any definition contained herein is either factually correct or legally binding on Plaintiff.

1.   "You" or "your" applies to Plaintiff, his attorneys and/or agents.

2.   "Document" means any written, (including handwritten, printed, mimeographed, lithographed, duplicated, typed or other graphic, photographic or electronic) matter of any kind or nature, whether original or copy, and includes, without limiting the generality of the foregoing, all letters, telegrams, correspondence, contracts, agreements, manuals, instructions, notes, recordings or transcripts thereof, memoranda of telephone or personal conversations or of meetings or conferences, minutes, board of directors minutes, studies, reports, analyses, test results, interoffice communications, receipts, canceled checks, money orders, email messages, computer diskettes, computer files, computer records, invoices and bills in the possession and/or control of Plaintiff or known by him to exist.

3.   "Person" or "persons" includes, without limitation, individuals, associations, partnerships, and corporations.

4.   "Identify," when used references a natural person, shall mean to state his or her full name, gender, and present or last known address.

5.   "Identify," when used with respect to a document, shall mean to state the date, subject or substance, author, addressee, recipient, type of document (e.g., letter, memorandum, computer data, etc.), its present location, and the identity of each of the present custodians and shall include documents with respect to which a privilege is or may be claimed. If you contend that any document has been lost or destroyed by you, please include that information in your response and state the substance of the contents of such documents.

6.   "Relating to" shall mean pertaining to, concerning, consisting of, referring to, supporting, corroborating, or any way logically or connected to the matter referred to or having the tendency to prove or disprove the matter referred.

7.   "Defendants" for the purpose of this document shall mean Eric W. Hines and Scott

Schuttinga.

8. "Plaintiff" for the purpose of this document shall mean Reginald White, Jr.

## **INTERROGATORIES**

Pursuant to *Federal Rule of Civil Procedure 33*, these Interrogatories are continuing in nature and require supplemental responses if additional information regarding them is obtained by Plaintiff. If any Interrogatory cannot be responded to in full, it should be answered to the fullest extent possible, and the reason(s) should be set forth regarding why it could not be answered in full. If in response to any interrogatory, Plaintiff asserts a claim of privilege, please give a full explanation of your reasons for asserting the privilege, and then comply with the response to the extent that the privilege or other reason does not apply to said particular response or part thereof, as required by Rule 33 of the *Federal Rule of Civil Procedure*.

**INTERROGATORY NO. 1:**         Please identify with specificity what you told the nurse when you were being seen in the Health Care Unit on April 14, 2019, after the use of force incident with the Defendants.

**RESPONSE:**         I told the nurse to write down, "I don't know." I told her to do this because I was scared I would face retaliation if I told her what happened. I wanted to tell her what happened to me, but I was scared of retaliation by the officers.

**INTERROGATORY NO. 2:**         Please identify all persons that you have spoken with at the Alabama Department of Corrections about the allegations contained in your Complaint.

**RESPONSE:**         I do not recall.

**INTERROGATORY NO. 3:**          Please list all lawsuits and appeals, which you have been a party to from January 1, 2015, to present.

**RESPONSE:**          To the best of my knowledge, this is my first civil lawsuit. I have filed appeals related to my criminal charges and I have appealed the disciplinary decisions related to this event.

**INTERROGATORY NO. 4:**          Please explain why you were not in your assigned dorm on April 14, 2019, immediately before the Institutional Bed Roster was initiated.

**RESPONSE:**          I was in the correct dorm, but I was in a different "bay". There was a common practice of being in a different "bay" than what people were assigned to be in. There was rarely punishment or admonishment for being in a different dorm/"bay" if there was no trouble being made. As soon as the officer told everyone to go home to the correct dorm/ "bay", I complied or at least attempted to do so.

**INTERROGATORY NO. 5:**          Identify every person whom you believe may possess discoverable information relevant to any of the allegations contained in your Complaint, and state with specificity the content of such information possessed by each such person and, as to each:

**RESPONSE:**          All the parties to this lawsuit. Anyone in the dorm/ "bay" where the events occurred that formed the basis of this lawsuit. I do not know all of their names. During the time that I was being beaten I could not see faces, as I was busy defending myself and trying not to die.

**INTERROGATORY NO. 6:**          Please explain why you refused to provide a statement about the use of force incident on April 14, 2019.

**RESPONSE:**          I was scared to provide a statement, initially but subsequently I gave a statement. I did not want to face retaliation. I was fearful but I gained courage to stand for what is right.

**INTERROGATORY NO. 7:**      Please explain what you were told by the medical staff after x-rays were taken of your knees on or around April 22, 2019.

**RESPONSE:**      The medical staff did not tell me anything that I recall. I do recall the pain I felt in my ribs and my legs. I continue to feel pain in my legs to this day.

**INTERROGATORY NO. 8:**      Please explain how "Ms. Love's harassment succeeded in getting Ms. Taylor terminated."

**RESPONSE:**      I do not recall anything about this item.

**INTERROGATORY NO. 9:**      Please state what the results of your urinalysis test were on April 14, 2019.

**RESPONSE:**      I do not recall this test or whether I was not told the results of a urinalysis test on April 14, 2019. If any urinalysis test had been positive, it is my understanding that prison policy would have required the imposition of a disciplinary report.

**INTERROGATORY NO. 10:**      Identify all witnesses (persons with personal knowledge obtained through their own sensory observations of any factual event) to the events described in the allegations contained in your Complaint, whether or not you intend to rely on the testimony of the witness.

**RESPONSE:**      I intend to call the Parties to this lawsuit. I intend to confer with my attorney on preparing a witness list in accordance with the Court's Pre-trial Order.

**INTERROGATORY NO. 11:**      Please provide the names, addresses, and telephone numbers of all spouses, children, and other relatives that reside in the Northern District of Alabama, Northeastern Division. The Northeastern Division of the Northern District of Alabama consists of the following counties: Cullman, Jackson, Lawrence, Limestone, Madison, and Morgan.

**RESPONSE:**        I do not have any immediate family/relatives in the listed counties.

**INTERROGATORY NO. 12:**        Please explain whether you received any disciplinary actions because of the use of force incident that occurred on April 14, 2019.

**RESPONSE:**        I did face disciplinary charges as a result of the incident occurring on April 14, 2019. I do believe those charges were retaliatory and that the ADOC has a practice of putting false charges on inmates if there is an excessive force incident.


## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to *Federal Rules of Civil Procedure 34*, the following requests are continuing in nature and require supplemental responses if additional information regarding them is obtained by Plaintiff. If any request cannot be responded to in full, it should be answered to the fullest extent possible, and the reason(s) should be set forth regarding why it could not be answered in full. If in response to any request Plaintiff asserts a claim of privilege, please give a full explanation of your reasons for asserting the privilege, and then comply with the response to the extent that the privilege or other reason does not apply to said particular response or part thereof, as required by Rule 34 of the *Federal Rules of Civil Procedure*.

**REQUEST NO. 1:**        Please provide a copy of all documents that you relied upon to respond to the Defendant's written discovery requests.

**RESPONSE:**        I do not have any other documents in my possession or control that I have not previously submitted or filed in this lawsuit. If I later discover additional documents in my possession or in my control then I will supplement what I have already filed.

**REQUEST NO. 2:** Please provide a copy of every document known to you or that you intend to rely upon at the trial of this matter in support of any of your claims contained in the Complaint.

**RESPONSE:** I do not have any other documents in my possession or control that I have not previously submitted or filed in this lawsuit. If I later discover additional documents in my possession or in my control then I will supplement what I have already filed.

## REQUEST FOR ADMISSIONS

Under *Federal Rules of Civil Procedure Rule 36*, Defendant requests admissions from Plaintiff for the purpose of expediting this cause. Defendant hereby requests Plaintiff make the following admissions for the purpose of this action only and subject to all objections as to admissibility which may be interposed at the trial. These answers are hereby requested to be made within thirty (30) days from the date of service of these requests.

**ADMISSION NO. 1:** Please admit that you were not in your assigned dorm when the Institutional Bed Roster was initiated on April 14, 2019 at approximately 8:09 p.m.

**RESPONSE:** Denied. I was in my assigned dorm. I was in a different "bay" - the "bay" was adjacent to my cell block and it is in the same dorm.

**ADMISSION NO. 2:** Please admit that you were combative and aggressive with the Defendants on April 14, 2019.

**RESPONSE:** Denied. I was not combative or aggressive. I was never the aggressor and I complied with direct orders when I was physically able to do so.

**ADMISSION NO. 3:** Please admit that you were given a urinalysis test on April 14, 2019.

**RESPONSE:**          I do not recall and do not have sufficient information to confirm or deny this request.

**ADMISSION NO. 4:**          Please admit that you told the nurse that you did not know what happened on the night of April 14, 2019.

**RESPONSE:**          Admit. I told the nurse that I did not know not because I did not actually know, but because I was terrified of facing retaliation.

**ADMISSION NO. 5:**          Please admit that the nurse assessed on April 14, 2019, that you were suicidal.

**RESPONSE:**          I do not recall and do not have sufficient information to confirm or deny this request.

**ADMISSION NO. 6:** Please admit that you refused to make a statement about the use of force incident.

**RESPONSE:**          Denied. I initially did not give a statement due to fear, but I ultimately gave numerous statements to anyone who would listen.

**ADMISSION NO. 7:**          Please admit that you were not taken to a hospital for medical treatment as a result of the use of force incident on April 14, 2019.

**RESPONSE:**          Admit. I was not taken to a "free world" hospital, but I was treated in the infirmary.

**ADMISSION NO. 8:**          Please admit that the x-rays of your knees showed no fractures, dislocations, or subluxations.

**RESPONSE:**          I do not recall and do not have sufficient information to confirm or deny this request.

Respectfully submitted this the 6th day of June 2022.

/s/ Richard R. Rice

RICHARD R. RICE

Counsel for the Plaintiff

**OF COUNSEL:**

The Rice Law Firm, LLC

420 20th Street North, Suite 2000

Post Office Box 453

Birmingham, Alabama 35201

rrice@rice-lawfirm.com

**VIII.    CERTIFICATE OF SERVICE**

I hereby certify that I have on June 6, 2022 electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of the same to Tara S. Hetzel.

Tara S. Hetzel

Deputy Attorney General

501 Washington Avenue

Montgomery, Alabama 36130

334-242-7300 (T)

334-353-8400 (F)

Tara.Hetzel@AlabamaAG.gov

/s/ Richard R. Rice

Richard R. Rice

The Rice Law Firm, LLC